Mark J. Wilk, OSB 814218
mwilk@oregonlawcenter.org
Veronica Digman-McNassar, OSB 120792
vdigman@oregonlawcenter.org
Oregon Law Center
230 W. Hayes Street
Woodburn, Oregon 97071
Telephone: (503) 981-0336

David Henretty, OSB 031870
dhenretty@oregonlawcenter.org
Oregon Law Center
522 SW 5th Ave, Suite 812
Portland, OR 97204
Telephone: (503) 473-8684

Of Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| ANA MARIA AMARAL GUIJARO, CONSUELO AMARAL GUIJARO, ALMA LOPEZ RUBIO, ELIZABETH AMARAL GUIJARO, AND ALL OTHERS SIMILARLY SIUATED | Case No. 6:19-CV-01003-AA |
|       Plaintiffs, | **PLAINTIFFS' UNOPPOSED MOTION FOR CONDITIONAL CERTIFCATION AND PRELIMINARY APPROVAL OF SETTLEMENT AND MEMORANDUM IN SUPPORT** |
|   v. | |
| BLUE HERON FARM, LLC, an Oregon limited liability company, | |
|      Defendant. | |

## LR 7-1 CERTIFICATION

In compliance with Local Rule 7-1(a), the parties, through their respective counsel, have conferred in multi-day settlement discussions between November 2019 and August 2020, including a day-long judicial settlement conference with the Hon. Thomas M. Coffin on January 10, 2020. Defendant Blue Heron Farm, LLC does not oppose this Motion.

Page 1- PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT, CLASS CERTIFCATION, AND MEMORANDUM IN SUPPORT

## MOTION

Plaintiffs Ana Maria Amaral Guijaro, Consuelo Amaral Guijaro, Alma Lopez Rubio and Elizabeth Amaral Guiaro, individually and on behalf of the proposed Class, hereby move the Court as follows:

1. Plaintiffs' Counsel, on behalf of Plaintiffs and the proposed Settlement Class, and Defendant, through its counsel, have agreed on a proposed compromise settlement of all claims of the Class against Defendant, as more particularly set forth in and attached as Exhibit 1 (Settlement Agreement), the terms and conditions of which are made part of this Motion.

2. The purpose and intent of all parties to this proposed Settlement are: (a) to settle any and all claims alleged in Plaintiffs' Complaint concerning Defendant's unauthorized payroll deductions for housing costs of class members who were housed at one of Defendant's two labor camps located in Marion and Polk County, Oregon, in 2017; (b) to terminate and extinguish all liability of Defendant for all Released Claims of the Class Members and Class Representatives; and (c) to dismiss on the merits and with prejudice all claims against Defendant.

3. The Parties now seek preliminary approval from this Court of the terms of the proposed Settlement Agreement, including:

(1)     Preliminary approval of the proposed Settlement memorialized in the proposed Settlement Agreement as being fair, adequate, and reasonable, such that notice to the Class should be provided pursuant to the proposed Settlement Agreement;

(2)     Certification of the Settlement Class as defined in the proposed Settlement Agreement for settlement purposes only;

(3)     Approval of a date for a Final Fairness Hearing;

Page 2- PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT, CLASS CERTIFCATION, AND MEMORANDUM IN SUPPORT

(4)     Approval of: (i) the proposed Notice to be mailed all Settlement Class Members in a form substantially similar to the one attached as Exhibit 2; and (ii) the proposed Claim Form in a form substantially similar to the one attached as Exhibit 3, both of which will be provided to proposed Class members in English and Spanish.

(5)     Approval of a Claims Deadline by which the Settlement Class Members shall be able to submit valid and completed Claim Forms;

(6)     Appointment of Oregon Law Center as the Settlement Claims Administrator as jointly agreed to by the Settling Parties;

(7)     Setting a specified date by which objections shall be heard and papers in support of such objections must be submitted to the Court;

(8)     Setting specified dates by which proposed Class Counsel shall file and serve all papers in support of the application for final approval of the proposed Settlement and by which the Parties shall file and serve all papers in response to any valid and timely objections and by which proposed Class Counsel shall file their motion for fees and expenses;

(9)     Ordering that all proposed Settlement Class members will be bound by the Final Approval Order and Judgment;

(10)     Ordering that persons in the Settlement Class wishing to exclude themselves from the proposed Settlement will have until the date specified in the Preliminary Approval Order to submit to the Settlement Administrator a valid written request for exclusion or opt out;

(11)     Approving the proposed Settlement Agreement's procedure for persons in the proposed Settlement Class to object, including the right to object to Plaintiffs' attorneys' fees and costs, or opt out from the proposed Settlement;

Page 3- PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT, CLASS CERTIFCATION, AND MEMORANDUM IN SUPPORT

(12)    Approving deadlines consistent with the proposed Settlement Agreement for mailing of notice to the Settlement Class, opting out of or objecting to the proposed Settlement, and filing papers in connection with the Final Fairness Hearing; and

(13)    Appointment of Plaintiffs as Representative Settlement Class Plaintiffs and Plaintiffs' Counsel as Class Counsel for the Settlement Class.

4. Defendant does not object to the motion, and consents to the relief sought by Plaintiffs.


## MEMORANDUM IN SUPPORT

### I.    Introduction

Plaintiffs seek conditional class certification and approval of a proposed settlement agreement on behalf of migrant agricultural workers whom Defendant Blue Heron Farm, LLC employed and housed in its labor camps in Marion and Polk Counties, Oregon, in 2017, and from whom it deducted housing charges without written authorization. Plaintiffs file their Motion pursuant to Fed. R. Civ. Pro. 23(e).

Defendant does not object to this Motion and agree to the relief sought by Plaintiffs. The proposed settlement is the result of extensive pre and post litigation negotiations between Plaintiffs and Defendant, including a day-long judicial settlement conference conducted by Magistrate Judge Thomas M. Coffin, during which the substantive terms of agreement were reached.  The proposed settlement provides statutory damages of $400 to each of 41 potential class members.

### II.    History of the Case

Plaintiffs are seasonal agricultural workers who worked for Defendant in Oregon in 2017 and were housed in Defendant's labor camps. Plaintiffs alleged that class members had rental

payments deducted from their pay without their written authorization, in violation of federal housing and state worker protection statutes. Plaintiffs further allege that in a number of instances, these deductions caused workers' wages to fall below the Oregon minimum wage.[1]

Plaintiffs made written demand on Defendant for class relief on June 26, 2018. Plaintiffs demanded that Defendant "cease from the violations outlined in this letter and that you change your practices to conform to the law." Plaintiffs also demanded from Defendant "your commitment that all potential class members similarly situated are identified, that you agree to pay an appropriate amount of statutory damages to each such worker, and that payment of such damages will be made within a reasonable time." Defendant acknowledged in writing on July 27, 2018 that "authorization [for rent deductions] was not part of the lease" and expressed a preference to resolve the matter amicably. Defendant further stated, "We have ceased the violations about which you wrote and have changed our practices to conform with the law so that they do not happen again."

Counsel for Plaintiffs, in an effort to resolve the matter without litigation, then engaged in extensive discussion with counsel for Defendant concerning payment of appropriate statutory damages to the class. Counsel also discussed possible resolution of unrelated claims for alleged familial status discrimination in the labor housing brought by five individual workers. The parties were unable to reach agreement on settling the claims, and plaintiffs filed their Class Action Allegation Complaint on June 26, 2019.

The parties engaged in extensive written discovery that established the number of class members who had rent charges taken from their paychecks without their written authorization. The parties then agreed to attempt settlement through a judicial settlement conference with the

---

[1] No class claim for statutory penalty wages under ORS 652.150 was brought because nearly all class members worked the entire season and had their rent refunded in their final paychecks.

Honorable Thomas M. Coffin. The parties participated in the settlement conference on January 10, 2020 and were able to reach settlement on substantive terms.[2] Given the uncertainties of outcome, damages available, and time until final decision, the parties believe the settlement to be fair, reasonable and adequate, and in the best interests of Plaintiffs and Class Members.

### III.    Terms of the Proposed Settlement

The basic terms of agreement reached by the parties are: payment of statutory damages on each claim for a total of $400 for each of the 41 identified Class Members; payment of Plaintiffs' attorney fees in the amount of $10,000; and payment of Plaintiffs' filing fee in the amount of $400. A payout amount of $16,400 for class members is established. Any unclaimed funds will revert to Farmworker Housing Development Corporation, which operates farmworker housing in Marion and Polk Counties. The amount of attorney fees is subject to Court approval. Oregon Law Center will act as Claims Administrator. No separate amount has been set aside for claims administration or incentive payments to the class representatives.

### IV.    Conditional Certification of the Proposed Settlement Class

Plaintiffs seek certification of a settlement class defined in Section 1.31 of the proposed Settlement Agreement and Release as: "all seasonal agricultural workers whom Blue Heron Farm LLC employed and had deductions for housing taken from their pay in any pay period in 2017 for housing without their written authorization."

Fed. R Civ. Pro. 23 (e) provides that the claims of a certified class action, or "a class proposed to be certified for purposes of settlement," may be settled only with the Court's approval.

---

[2] The parties also attempted resolution separately of the familial status discrimination claims at the judicial settlement conference (Case No. 6:19-CV-01019-AA). Final resolution of both matters was achieved on September 20, 2020, when Defendant signed both settlement agreements.

In order to approve a class settlement, the Court must determine that certification of the proposed class is appropriate. *Amchem Prods.Inc. v. Windsor,* 521 U.S. 591 , 620 (1997). *See, also Newberg on Class Actions* Section 13:1 (Fifth Edition, 2014):, "*First,* the parties present a proposed settlement to the court for so-called 'preliminary approval.' If a class has not yet been certified, the parties will typically simultaneously ask the court to conditionally certify a settlement class." Plaintiffs meet all of the requirements for class certification under Fed. R. Civ. Pro. 23(a) and 23(b)(3).

**A. Plaintiffs Satisfy the Standards for Class Certification Under Rule 23(a).**

**1. Numerosity**

Fed. R. Civ. Pro. 23(a)(1) requires a showing that the class is so numerous that joinder of all members is impracticable.  In the District of Oregon, a proposed class with forty or more members is generally considered to make joinder impracticable.  *See, Oregon Laborers-Employers Health & Welfare Trust Fund v. Philip Morris, Inc.*, 188 F.R.D. 365, 372 (D. Or. 1998) (as a rule of thumb, the numerosity requirement satisfied if class has forty or more members). S*ee, also* 1 Newberg on Class Actions § 3:12, p. 198 (5th ed. 2011) ("…a class of 40 or more members raises a presumption of impracticability of joinder based on numbers alone.").

The 41 class members in the proposed class are sufficient to satisfy numerosity.  Class members are also seasonal agricultural workers. Federal courts have recognized the difficulty of individually joining migrant farmworkers: "With their lack of English, their presumably limited understanding of the legal system, the fact that few live permanently within the [District], and their generally indigent status, it is highly unlikely that individual plaintiffs would pursue this litigation if class certification were not allowed." *Leyva v. Buley*, 125 F.R.D. 512, 518 (E.D. Wash. 1989);

*see also, Rodriguez v. Berrybrook Farms, Inc.*, 672 F. Supp 1009, 1014 (W.D. Mich. 1987). Joinder of all members of the class is impracticable.  Fed. R. Civ. Pro.  23(a)(1) is satisfied.

### 2.  Commonality

Fed. R. Civ. P. 23(a)(2) requires that there be "questions of law or fact common to the class." Commonality is satisfied when the claims of class members "depend upon a common contention…that is capable of class-wide resolution." *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 350 (2011). Class actions may be certified when they "turn on questions of law applicable in the same manner to each member of the class." *Gen. Tel. Co. of SW v. Falcon,* 457 U.S. 147, 155 (1982).  The rule is satisfied when a defendant "has engaged in some course of conduct that affects a group of persons and gives rise to a cause of action…" *Oregon Laborers,* 188 F.R.D. at 373.

This case satisfies the requirements of Fed. R. Civ. Pro.  23(a)(2).  The facts are common to all class members and undisputed: 41 migrant workers who were employed by Blue Heron Farm, LLC had deductions taken from their pay for housing costs without their written authorization in 2017.

### 3.  Typicality

Fed. R. Civ. Pro. 23(a)(3) requires that the claims of the plaintiffs be typical of the claims of class members. "The purpose of the typicality requirement is to assure that the interest of the class representative aligns with the interests of the class." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). "[A] plaintiff's claim is typical if it arises out of the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *Sorenson v. Concannon*, 893 F. Supp. 1469, 1479 (D. Or. 1994).

The claims of the named Plaintiffs in this civil action are identical to those of the proposed Class Members. All have claims for statutory damages for violations of federal and state laws concerning the payment of wages when due and unauthorized deductions. Defendant's alleged practice of deducting housing costs without written authorization violated the federal Migrant and Seasonal Agricultural Workers Protection Act (AWPA), 29 U.S.C. § 1832, and the Oregon wage deduction statute, ORS 652.610(3). The named Plaintiffs' claims satisfy the typicality requirement.

**4. Adequacy of Representation**

Fed. R. Civ. Pro. 23(a)(4) requires a determination that the representatives parties will "fairly and adequately protect the interests of the class." "To determine whether named plaintiffs will adequately represent a class, courts must resolve two questions: '(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Ellis v. Costco Wholesale Corp.* 657 F.3d 970, 985 (9th Cir. 2011)) quoting *Hanlon v. Chrystler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

The interests of the Named Plaintiffs are identical to the interests of every member of the proposed settlement class: their experience, claims and statutory damages are exactly the same. They have made themselves available to assist in the development and prosecution of the legal action, and to make decisions on behalf of the Class. They have been available for in-person meetings and telephone consultations, and they have participated or been available during the day-long judicial settlement conference that resulted in this proposed settlement. They have repeatedly affirmed their interest in ensuring a fair outcome for Class Members, not just their own self-interest.

Counsel are adequate if they are "qualified, experienced, and generally able to conduct the litigation." *Freedman v. Louisiana-Pacific Corp.,* 922 F. Supp. 377, 399 (D. Or. 1996). Lead counsel for plaintiffs has 38 years of experience representing migrant and seasonal agricultural workers throughout Oregon, including federal class actions, multi-party actions and other labor and housing litigation. *See,* Declaration of Mark J. Wilk ¶ 2-6. The Named Plaintiffs and their Counsel satisfy the requirements of Fed. R. Civ. Pro. 23(a)(4).

**B. Plaintiffs Satisfy the Standards of Rule 23(b)(3) for the Proposed Settlement Class.**

In addition to the requirements of Fed. R. Civ. Pro. 23(a), Fed. R. Civ. Pro. 23(b)(3) requires that the Court find "that the questions of law and fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Common questions of law and fact clearly predominate for both the named plaintiffs and class members alike. Likewise, resolving this controversy as a class action is not only superior but likely the only method actually available to do so, given the practical reality of the members of the class.

**1. Common Issues of Law and Fact Predominate in All the Claims for Relief.**

The predominance standard requires showing that the proposed class is "sufficiently cohesive to warrant adjudication by representation." *Hanlon*, 150 F.3d at 1022 (citing *Amchem*, 521 U.S. at 623). The predominance inquiry measures the relative weight of the common questions as against individual ones. *Amchem*, 521 U.S. at 624. The claims in this civil action are based on alleged acts and omissions of the Defendant that are identical with respect to each Named Plaintiff and each Class Member.

The Complaint alleges that Defendant violated the federal AWPA, 29 U.S.C. § 1832, by failing to pay all wages when due, based on the unauthorized deductions for housing costs. The Complaint also alleges violations of the Oregon wage deduction statute, ORS 652.610(3).

Just as the claims for each of the Named Plaintiffs and the proposed Class Members are identical, so too are the amount of statutory damages available to each Named Plaintiff and Class Member. "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Local Joint Executive Bd. Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001).

**2. Class Adjudication of the Claims is Superior to Other Available Methods.**

In determining whether a class action is superior to other methods of resolving the issues, the focus is on efficiency; superiority is demonstrated where "class-wide litigation of common issues will reduce litigation costs and promote greater efficiency." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). Fed. R. Civ. Pro. 23(b)(3) lists four factors that are pertinent in evaluating superiority: (1) the interest of class members in individually controlling separate actions; (2) the extent and nature of any litigation already commenced by members of the class; (3) the desirability or undesirability of concentrating the litigation of the claims in this forum; and (4) the difficulty likely to be encountered in the management of a class action.

All four factors demonstrate the superiority of settling this civil action as a class action. As to the first two factors, no member of the proposed class has initiated any other action, which is unsurprising given their lack of proficiency in English, migratory status, and poverty. The

realistic alternative to class certification is that most class members will forfeit their claims. "In the class action context, the desirability of concentrating claims in a particular forum is relevant only when other class litigation has already been commenced elsewhere." Newberg on Class Actions, § 4.31 at 4-124 (3d ed. 1992). This civil action arises entirely in the District of Oregon.

The fourth factor, referred to as "manageability," is not relevant because the claims are being certified for the purpose of settlement. "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, see Fed. R. Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620. Class certification for settlement is appropriate in this case.

### C. Plaintiffs' Counsel Should be Designated Class Counsel Pursuant to Rule 23(g)(1).

When a class is certified, the Court must appoint class counsel and the class certification order must list the appointed counsel. Fed. R. Civ. P. 23(c)(1)(B) and (g)(1). Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv) require the court to consider four factors in appointing class counsel: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class.

Named Plaintiffs' attorneys qualify for designation as class counsel, having handled this case from initial interviews of the Name Plaintiffs, initiation of litigation, and participation in the judicial settlement conference which resulted in the proposed class settlement. Class counsel has 38 years of experience in representing migrant farmworkers in class action and multi-party

employment and housing litigation. Declaration of Mark J. Wilk ¶ 2-6. Plaintiffs' counsel has the resources to continue to represent the class throughout settlement. Declaration of Mark J. Wilk ¶ 8-10. The Court should appoint Named Plaintiffs' attorneys as class counsel in its class certification order.

The Court should also appoint Named Plaintiffs' lead counsel's employer, Oregon Law Center, as Settlement Claims Administrator, as mutually agreed by the parties. Oregon Law Center has been claims administrator in numerous class actions. Declaration of Mark J. Wilk ¶ 5, 7, 11. Most recently lead counsel administered distribution of class proceeds to 520 migrant farmworkers in an AWPA class action. Declaration of Mark J. Wilk ¶ 5.

### V.    Preliminary Approval of the Proposed Settlement Agreement

Fed. R. Civ. Pro. 23(e) requires judicial approval for settlement of a class action. The parties' proposed settlement is fair, reasonable and adequate, and the Court should grant preliminary approval to the proposed Settlement Agreement. Preliminary approval of a settlement is appropriate if "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to segments of the class, and falls within the range of possible approval." *See, Booth v. Strategic Realty Trust, Inc.*, No. 13–cv–04921–JST, 2015 WL 3957746, at *6 (N.D. Cal June 28, 2015) (citing *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Ca. 2007)).

"The general rule that the court will grant preliminary approval where the proposed settlement 'is neither illegal nor collusive and is within the range of possible approval' contains both procedural and substantive elements." 4 Newberg on Class Actions §13.14 (5th Ed.)(quoting *In Re Vitamins Antitrust Litigation*, 1999 WL 1335318 *5 (D.D.C. 1999)). "At the stage of

Page 13- PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT, CLASS CERTIFCATION, AND MEMORANDUM IN SUPPORT

preliminary approval, the questions are simpler, and the court is not expected to, and probably should not, engage in analysis as rigorous as is appropriate for final approval." Manual for Complex Litigation 4th §21.63.

### A. The Proposed Settlement Meets the Standard of Procedural Fairness.

"The primary procedural factor courts consider in determining whether to preliminarily approve a settlement is whether the agreement arose out of arms-length, non-collusive negotiations." 4 Newberg on Class Actions §13.14 (5th Ed.). The fact that basic agreement was reached in mediation using an experienced mediator supports the conclusion that the settlement is not collusive. A settlement "reached with the help of third-party neutrals enjoys the 'presumption that the settlement achieved meets the requirements of due process." *In re Penthouse Executive Club Compensation Litigation*, 2013 WL 1828598, *2 (S.D.N.Y. 2013).

Basic terms of agreement were reached at the end of a day-long judicial settlement conference on January 10, 2020: $16,400 to the 41 class members; $400 for the filing fee; and $10,000 in plaintiffs' attorney fees. Each class representative and class member will receive the exact same amount of statutory damages: $400 in total for the two federal and state claims. The amount of Named Plaintiffs' attorney fees was discussed only at the end of the judicial settlement conference, and the court will make the final determination on the amount of attorney fees.

That settlement was achieved early in the litigation is no basis to dispute the validity of the agreement on procedural grounds. "Absent some evidence of actual collusion in negotiating the settlement, the Court will not deny preliminary approval on this ground." *Trombley v. National City Bank*, 759 F. Supp 2d 20, 28 (D.D.C. 2011). The housing situation of the class members was

largely known when the Complaint was filed, except the exact number of class members, which

has since been established through discovery as forty-one (41).

      **B.**      **The Proposed Settlement Meets the Standard of Substantive Fairness.**

The claims in the Complaint, if successfully proven, present uncertain and indeterminate

amounts of statutory damages to be recovered. The settlement provides certain and prompt

recompense to very low-income migrant agricultural workers who would otherwise receive

nothing. The parties' proposed settlement provides substantial and equal statutory damages to each

class member who files a claim under the procedures outlined in the Settlement Agreement. Based

on all the circumstances, the settlement provides fair, reasonable and adequate relief to the class.

      **1.**    **The Costs, Risks and Delay of Trial and Appeal Support Settlement Approval.**

Plaintiffs' federal claims depend on whether the deduction of housing costs from

paychecks without written authorization constitutes a "failure to pay wages when due," and if so,

the appropriate amount of statutory damages available to the named plaintiffs and other class

members. It is clear that the forty one (41) identified class members had deductions taken from

their pay for housing costs in 2017, and that none of them signed written authorizations in 2017

for those deductions. But many class members had signed deduction authorizations in prior years,

and while they were rehired in 2017, the effect of the prior year deduction authorizations is unclear

as a matter of law. In addition, the housing charges were refunded to most class members in their

final paycheck.

The outcome of the factual and legal issues concerning the statutes' coverage are by no

means certain. Defendant has vigorously defended its actions. The additional costs and delay for

trial and possible appeal are considerable. Plaintiffs are migrant farmworkers whose availability

Page 15- PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
SETTLEMENT, CLASS CERTIFCATION, AND MEMORANDUM IN SUPPORT

for depositions and trial could be difficult. As time passes, the ability to contact class members

also decreases. Settlement approval eliminates these concerns.

### 2. The Proposed Settlement Falls within the Range of Possible Approval.

Each class member is eligible to receive $400 in statutory damages if the settlement

agreement is approved.[3] The amount that class members will receive is fair, reasonable and

adequate, based on the claims alleged and the uncertainty of the amount of statutory damages

recoverable under both the federal and state claims. Each class member will receive $200 for each

of the two claims alleged in the Class Action Allegation Complaint.

The Federal AWPA allows plaintiffs to recover "statutory damages of up to $500 per

plaintiff per violation."  29 U.S.C. § 1854(c)(1). The actual amount of statutory damages awarded

is discretionary with the Court. *Bobadilla-German v. Bear Creek Orchards, Inc.*, 2009 WL

3448212 at *10 (D. Or. October 21, 2009); *Saur v. Snappy Apple Farms, Inc.*, 203 F.R.D 281, 284

(W.D. Mich. 2001). Multiple infractions of a single AWPA provision constitute only one violation

if they occur within a single transaction. 29 U.S.C. § 1854(c)(1); *Martinez v. Shinn,* 992 F.2d 997,

1000 (9th Cir. 1993). The purpose of statutory damage awards is to promote compliance with the

AWPA by deterring violations by agricultural employers and farm labor contractors. *Six Mexican*

*Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1309 (9th Cir. 1990).

Courts have articulated a number of considerations in exercising their discretion in the

award of AWPA statutory damages.   The total amount of the award should not be

"disproportionately punitive." *Six Mexican Workers,* at 1310. A defendant's ability to prevent

future violations is relevant. *Beliz v. W.H. McLeod & Sons Packing Co.,* 765 F.2d 1317, 1332 (5th

---

[3] The parties agree that the statutory damages are not wages subject to withholding under IRC Section 3401(a).

Page 16- PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
SETTLEMENT, CLASS CERTIFCATION, AND MEMORANDUM IN SUPPORT

Cir. 1985). Whether the violations are "substantive" or "technical" in nature is an appropriate consideration. *Id.* at 1332. The Court can consider the total number of violations, the total number of plaintiffs involved and the total amount of recovery, including recovery on closely related claims in the same action that will in part compensate for damage caused by violation of the AWPA. *Id.* at 1332-1333. Damage awards in similar cases is relevant. *Martinez,* at 999.

In *Beliz,* the Court awarded $50 per plaintiff for housing workers without a certificate of authorization. Failure to post housing terms and conditions resulted in recovery of $20 per worker per season (up to three seasons) in *De La Fuente v. Stokely Van Camp*, 713 F.2d 225 (7th Cir.1983). In *Bobadilla-German*, Judge Panner awarded class members $75 for lack of written disclosure of terms and conditions of employment and housing. Judge Brown declined to award any AWPA damages as being duplicative of statutory damages recovered under the OCRA. *Santiago v. Tamarack Tree Co.,* 2007 WL 3171137 at *3 (D. Or. 2007). While other cases have awarded the full amount of AWPA damages for substandard violations, *see, e.g. Herrera v. Singh,* 103 F. Supp. 2d 1244, 1251 (E.D.Wash. 2000), an award of the full $500 is "not the norm." *Aviles v. Kunkle,* 765 F. Supp. 358 (S.D. Tex. 1991).

The amount of statutory damages recoverable under the Oregon wage deduction statute, ORS 652.615, is likewise uncertain. ORS 652.615 provides: "There is hereby created a private cause of action for a violation of ORS 652.610(3) for actual damages or $200, whichever is greater. In any such action the court may award to the prevailing party, in addition to costs and disbursements, reasonable attorney fees."

The text of the statutory provision itself is the starting point for interpretation and is the best evidence of the legislature's intent. *Portland Gen. Elec. Co. v. Bureau of Labor & Indus.*, 317

Or. 606, 608, 859 P.2d 1143, 1144 (1993). Plain reading of the text in ORS 652.615 indicates a singular cause of action for a singular violation by using the word "a." No state appellate court has affirmatively decided whether multiple violations of ORS 652.610 allow multiple recovery of statutory damages pursuant to ORS 652.615, although multiple recoveries were allowed by a Marion County trial court and were not at issue on appeal. *Jones v. Four Corners Rod and Gun Club*, 366 Or. 100. 456 P.3d 616 (2020).

On the other hand, federal courts in Oregon, and the Ninth Circuit, have held that a successful plaintiff can recover either actual damages or a single statutory damage sum of $200 per cause of action. *Brinkman v. ABM Onsite Servs. - W., Inc.,* No. 3:17-CV-00275-SI, 2019 WL 1782117 (D. Or. April 23, 2019); *Nance v. May Trucking Co.,* 2014 WL 2113094 (D. Or. May 20, 2014); *Smith v. Woodward*, 2003 WL 23537985 (D. Or. Sept. 30, 2003); *Richardson v. Sunset Sci. Park Credit Union*, 268 F.3d 654, 658 (9th Cir. 2001).

The Court in *Brinkman* was "unconvinced that the singular usage of 'violation' in the statute is reflective of the legislature's intent to make the $ 200 penalty available 'per' violation." They found the Plaintiff's emphasis on the statute's use of the article "a" preceding "violation" to be unpersuasive, stating that while Plaintiff is correct that the article "a" may be used to indicate one in number, as in "I own *a* dog and two cats," the article may also be used to indicate any non-specified member of a group or category, as in "this conduct is *a* violation of the statute." *Brinkman v. ABM Onsite Servs. - W., Inc.,* No. 3:17-CV-00275-SI, 2019 WL 1782117, at *3 (D. Or. April 23, 2019). The court in *Brinkman* also cited footnote two in an Oregon Supreme Court case, *Allen v. Cty. of Jackson Cty.*, 340 Or. 146, 129 P.3d 694 (2006), which states that "[t]he judgment below awarded each recovering plaintiff more than $200 in damages, so the statutory

minimum recovery did not come into play." The Brinkman court interpreted this non-holding as the "best indicator of how the Oregon Supreme Court views the proper measure of damages of this statute: actual damages or $200 total, and not $200 per violative deduction." *Brinkman v. ABM Onsite Servs. - W., Inc.,* No. 3:17-CV-00275-SI, 2019 WL 1782117, at *5 (D. Or. April 23, 2019).

The proposed settlement provides $400 in statutory damages to each class member: $200 for violation of the AWPA, and $200 for violation of ORS 652.615. The proposed settlement provides certain and substantial statutory damages without delay and is well within the range of reasonableness. Defendant's changes to its housing agreements and deduction procedures provide additional value to class members and other migrant agricultural workers coming to Blue Heron to work. The Court should preliminarily approve the parties' settlement.

The agreed settlement provides an economic benefit to class members who might not otherwise receive anything at all. "The likelihood that the plaintiff class (not yet certified) would be able to attain certification as a litigation class and would be successful at trial, as well as other drawbacks of litigation such as delay and unavoidable expenditure of additional resources are all pertinent considerations that bear on the reasonableness of the value of relief provided in the proposed settlement." 4 Newberg on Class Actions §13.15 (5th Ed.), citing *Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d 1114, 1125-26 (E.D. Cal. 2009) (finding settlement value fell within the range of possible approval considering that plaintiffs' claims turn on unsettled legal questions that might not be resolved in their favor, the agreement "does not release unrelated claims," and moreover that plaintiffs "would be required to expend considerable additional time and resources potentially outweighing any additional recovery obtained through successful litigation.")

## VI.    Approval of the Parties' Proposal to Provide Notice

Fed. R. Civ. Pro. 23(c)(2)(B) provides: "For any class certified under Rule 23(b)(3) – or upon ordering notice under Rule 23(e)(1) to a class  proposed to be certified for purposes of settlement under Rule 23(b)(3) – the court must direct to class members the best notice that is practicable under the circumstance, including individual notice to all class members who can be identified through reasonable effort."  Fed. R. Civ. Pro. 23(e)(1) likewise requires notice of a proposed class settlement if the "proposal would bind class members."

Section 2.3 of the proposed settlement agreement sets out the procedures for providing notice to Class Members. Within 20 days of entry of the Preliminary Approval Order, written notice of the lawsuit and a claim form will be sent to all class members by first class mail. The Notice explains the terms of the settlement and advises class members of the rights to participate, opt out, or object to the settlement. Class members will be given 90 days to return a claim form or an opt-out statement, and an additional 60 days if notice was not received within the 90-day period. If any notice is returned as undeliverable, the Claims Administrator will take all reasonable steps to obtain a correct address and will re-mail the Notice and Claim Form. In addition, a follow-up postcard will be mailed to each class member who has not responded to the first mailed notice three weeks before the end of the notice period.

Section 2.3(D) provides that other notice may be permitted as "agreed upon by counsel for the parties to facilitate payment to Class Members." Section 2.3(F) requires the parties and their counsel agree to cooperate with each other to accomplish the terms of the Agreement. "Defendants will work with Plaintiffs in good faith to locate class members and facilitate payment to them

including providing the most recent address information for each Class Member." Defendants will provided a Class List in electronic format with the names and addresses of all forty-one (41) Class Members.

### VII.    Scheduling Further Proceedings to Finalize Settlement

Plaintiffs respectfully request that the Court grant Plaintiffs' unopposed Motion, issue an Order to conditionally certify the class for settlement purposes, preliminarily approve the settlement, and schedule dates for filing an Application for Final Approval and for a Final Approval Hearing. The proposed Settlement Agreement requires the mailing of Notice and Claim Forms no later than 20 days after entry of the Preliminary Approval Order. Class members have 90 days from the date of mailing to return a Claim Form, with an additional 60 days for those who did not receive Notice or were unable to file the Claim Form within 60 days. The Court should also set a deadline for filing of objections.

DATED: March 15, 2021                          OREGON LAW CENTER

                                               s/ Mark J. Wilk
                                               _____
                                               Mark J. Wilk, OSB No.814218
                                               Of Attorneys for Plaintiffs
                                               Telephone: (503)981-0336
                                               Of Attorneys for Plaintiffs