Mark J. Wilk, OSB 814218
mwilk@oregonlawcenter.org
Veronica Digman-McNassar, OSB 120792
vdigman@oregonlawcenter.org
Oregon Law Center
230 W. Hayes Street
Woodburn, Oregon 97071
Telephone: (503) 981-0336

David Henretty, OSB 031870
dhenretty@oregonlawcenter.org
Oregon Law Center
522 SW 5th Ave, Suite 812
Portland, OR 97204
Telephone: (503) 473-8684

Of Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| ANA MARIA AMARAL GUIJARO, CONSUELO AMARAL GUIJARO, ALMA LOPEZ RUBIO, ELIZABETH AMARAL GUIJARO, AND ALL OTHERS SIMILARLY SIUATED<br><br>Plaintiffs,<br><br>v.<br><br>BLUE HERON FARM, LLC, an Oregon limited liability company,<br><br>Defendant. | Case No. 6:19-CV-01003-AA<br><br>**PLAINTIFFS' UNOPPOSED MOTION AND MEMORANDUM FOR FINAL APPROVAL OF SETTLEMENT** |

## <u>LR 7-1 CERTIFICATION</u>

In compliance with Local Rule 7-1(a), the parties, through their respective counsel, have conferred in multiple settlement discussions, including a day-long judicial settlement conference with the Hon. Thomas M. Coffin on January 10, 2020. Counsel for defendant was provided a draft copy of this Motion on September 25, 2021. Defendant does not oppose this Motion.

## MOTION

Plaintiffs Ana Maria Amaral Guijaro, Consuelo Amaral Guijaro, Alma Lopez Rubio and Elizabeth Amaral Guiaro, individually and on behalf of the proposed Class, move that the Court:

1.      approve the Settlement Agreement as fair, reasonable, adequate, and binding on all Class Members who have not timely opted out of the settlement;

2.      enjoin all Class Members who did not opt out from pursuing and/or seeking to reopen claims that have been released by the Agreement;

3.      Order defendant to provide to the Settlement Claims Administrator the Gross Settlement Fund of $26,800;

4.      order the Settlement Claims Administrator to distribute Settlement Checks to the Authorized Claimants as described in the Agreement;

5.      order that Class Counsel's Attorney Fees of $10,000 and Costs of $400 be paid from the Qualified Settlement Fund (QSF);

6.      Order that the remainder of the Payout Amount revert to Farmworker Houising Development Corporation, as provided in Section 3.1.A. of the Agreement;

7.      dismiss the Action against the Defendant with prejudice and without costs or fees not referenced in the Agreement, and release the Released Class Claims (as defined in the Agreement) against Defendant;

8.      enter a Final Order in accordance with the Agreement;

9.      retain jurisdiction over the interpretation and implementation of the Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of the Agreement and of the settlement contemplated thereby.

In support of their Motion, plaintiffs provide the Court with the Settlement Agreement and Release (attached as Exhibit 1), Report of the Settlement Claims Administrator, Declaration of Mark J. Wilk in Support of Final Approval of Settlement, Declaration of Enrique Santos,   and the following memorandum.

## MEMORANDUM IN SUPPORT

### I.     Introduction

The Court entered an Order Conditionally Certifying Class and granting Preliminary Approval of Settlement, on April 16, 2021. Plaintiffs now seek final approval of the parties' agreed settlement on behalf of migrant agricultural workers whom defendant Blue Heron Farm, LLC  employed and housed in its labor camps in Marion and Polk Counties, Oregon, in 2017, and from whom it deducted housing charges without written authorization. Plaintiffs file their Motion pursuant to Fed. R. Civ. Pro. 23(e).

Defendant does not object to this Motion and agrees to the relief sought by plaintiffs. The proposed settlement is the result of extensive pre and post litigation negotiations between plaintiffs and defendant, including a day-long judicial settlement conference conducted by Magistrate Judge Thomas M. Coffin, during which substantive terms of agreement were reached.

The Settlement Agreement provides for statutory damages of $400 to each class member who timely returned a signed claim form. Ex. 1 Sec. 3.1. No additional service award is sought for the named plaintiffs. The Agreement provides that the unclaimed damages of 27 class members, in a total amount of $10,800, revert to Farmworker Housing Development Corporation (FHDC). The Agreement provides for plaintiffs to petition the Court for attorney fees and claim administration costs in the amount of $10,000 and for court costs of $400.

## II.     Status of the Case

Since preliminary approval of the settlement agreement, extensive efforts have been made to provide notice of the pendency of this Action to all class members, to respond to inquiries and answer questions, and to facilitate the completion and return of claim forms by class members interested in participating in this settlement of their potential claims. *See, generally* Report of Settlement Claims Administrator Mark J. Wilk (SCA Report); Declaration of Enrique Santos (Santos Dec.).

The Court-approved Notice of Pendency of Class Action Settlement and Claim Form was mailed to each of the 41 class members to the addresses provided in the Class List on April 22, 2021. SCA Report ¶ 5. The initial claiming period of 90 days was extended for an additional 60 days for class members who did not timely receive notice. Ex.1 Sec. 1.4. As of the final Bar Date of September 21, 2021, 14 class members had returned signed claim forms. SCA Report ¶ 34. No class members have filed opt-out statements or objections to the settlement. SCA Report ¶ 24, 28. No objections from any government entities have been received pursuant to the Class Action Fairness Act, ("CAFA"), 28 U.S.C. § 1715. SCA Report Dec. ¶ 30.

## III. Final Approval of the Proposed Settlement Agreement

Fed. R. Civ. Pro. 23(e) requires judicial approval of of a class action settlement, and Fed. R. Civ. Pro. 23(e) requires, "if the proposal would bind class members," a judicial finding that the terms of the settlement are "fair, reasonable and adequate."   In *Hanlon v. Chrysler Corp.*, 150 F.3d 1011,1026 (9th Cir.1998), the Court articulated considerations for this Court to weigh, denominated "the *Hanlon* factors", to ensure the settlement is fair, reasonable and adequate:

Assessing a settlement proposal requires the district court to balance a number of factors: the strength of the plaintiffs' case; the risk,

Page 4- PLAINTIFFS' UNOPPOSED MOTION AND MEMORANDUM FOR
        FINAL   APPROVAL OF CLASS SETTLEMENT

expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceeding; the experience and views of counsel;  the presence of a government participant; and the reaction of class members to the proposed settlement.

*Hanlon* at 1026. The factors are now called the "*Churchill* factors."  4 Newberg on Class Actions  13.48 fn 3 (5th Ed.), citing *In re Online DVD-Rental Antitrust litigation*, 779 F.3d 934, 944 (9th Cir. 2015); *Churchill Village LLC v. General Electric*, 361 F.3d 566,575 (9th Cir. 2004).

The factors used in the Ninth Circuit all support final approval of the settlement agreement and settlement of this Action as a class action. *See, Officers for Justice v. Civil Service Com'n of City and County of San Francisco,* 688 F.2d 615, 625 (9th Cir. 1982): "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." Not every factor must weigh in favor of approval. In this case, all of the factors favor judicial approval of the parties' settlement.

1.    **The strength of the plaintiffs' case**

The claims in in this action are for statutory damages for deducting from wages charges for agricultural labor housing without written authorization, in violation of the federal Migrant and Seasonal Agricultural Workers Protection Act (AWPA), 29 U.S.C. 1832(a), and the Oregon wage deductions statute, ORS 652.610(3). Class Action Allegation Complaint ¶ 23-26.While defendant has denied liability, plaintiffs' claims are strong, as defendant's records confirm that

deductions without written authorization were taken from the wages of 41 class members in 2017. Wilk Dec. ¶ 8.   Defendant did produce   nine deduction authorizations signed in 2017, and these workers are not part of the settlement class. Wilk Dec. ¶ 9. Defendant also produced 22 deduction authorizations signed by class members in prior years.     Wilk Dec. ¶ 9.

The main concern is the amount of statutory damages recoverable under the federal and state statutes. Assuming liability, the amount of statutory damages recoverable is uncertain. The AWPA allows plaintiffs to recover "statutory damages of up to $500 per plaintiff per violation." 29 U.S.C. § 1854(c). The actual amount of statutory damages awarded is discretionary with the Court. *See*, *e.g. Bobadilla-German v. Bear Creek Orchards, Inc.*, 2009 WL 3448212 at *10 (D. Or. October 21, 2009)(awarding $75.00 to class members for failure to provide written disclosure of terms and conditions of employment).

The amount of statutory damages recoverable under the Oregon wage deduction statute, ORS 652.615, is likewise uncertain. ORS 652.615 provides: "There is hereby created a private cause of action for a violation of ORS 652.610(3) for actual damages or $200, whichever is greater." While some state trial courts have allowed multiple recoveries for multiple violations, federal courts in Oregon, and the Ninth Circuit,  have limited recovery to $200 per plaintiff. *Brinkman v. ABM Onsite Servs. - W., Inc.,* No. 3:17-CV-00275-SI, 2019 WL 1782117 (D. Or. April 23, 2019); *Nance v. May Trucking Co.,* 2014 WL 2113094 (D. Or. May 20, 2014); *Smith v. Woodward*, 2003 WL 23537985 (D. Or. Sept. 30, 2003); *Richardson v. Sunset Sci. Park Credit Union*, 268 F.3d 654, 658 (9th Cir. 2001).

**2. The risk, expense, complexity, and likely duration of further litigation**

The additional time and expenses for motion practice, trial and appeal are considerable. The named plaintiffs are migrant and seasonal farmworkers whose availability for depositions and trial would be problematic. Wilk Dec. ¶ 10. Most of the class representatives and class members are not year-round Oregon residents, and travel costs for discovery and trial will be considerable. Wilk Dec. ¶ 11. Given the uncertainties concerning recoverable damages and the potential for appeal, approval of the settlement will avoid additional expenses and delay in the final resolution of the action. "Legal complexity, factual complexity, even complexity in one portion of the case (such as determining damages), all weigh in favor of settlement." 4 Newberg on Class Actions   13.52 (5th Ed.).

### 3. The risk of maintaining class action status throughout the trial

The size of the certified class is 41 workers and is certain and sufficient to satisfy numerosity. The "rule of thumb" in the District of Oregon is that 40 or more class members satisfies the numerosity requirement. *Oregon Laborers-Employers Health & Welfare Trust Fund v. Philip Morris*, 188 FRD 365, 372 (D Or 1998). But the Court also noted, "If the number of class members alone is insufficient to show the impracticability of joinder," the district court should consider additional "'factors such as the geographical diversity of class members, the ability of individual claimants to institute separate suits, and whether injunctive or declaratory relief is sought."188 FRD at 373 (quoting *Jordan v. County of Los Angeles*, 669 F2d 1311, 1319 (9th Cir 1982), vacated on other grounds, 459 US 810 (1982)). One district court certified a class of 16 members. *Jackson v. Danberg*, 240 FRD 145, 147 (D Del 2007).

Class members are also migrant and seasonal agricultural workers. Federal courts have recognized the difficulty of individually joining migrant farmworkers: "With their lack of English, their presumably limited understanding of the legal system, the fact that few live

Page 7- PLAINTIFFS' UNOPPOSED MOTION AND MEMORANDUM FOR
                FINAL   APPROVAL OF CLASS SETTLEMENT

permanently within the [District], and their generally indigent status, it is highly unlikely that individual plaintiffs would pursue this litigation if class certification were not allowed." *Leyva v. Buley*, 125 F.R.D. 512, 518 (E.D. Wash. 1989); *see also, Rodriguez v. Berrybrook Farms, Inc.*, 672 F. Supp 1009, 1014 (W.D. Mich. 1987).    Joinder of all members of the class is impracticable

At the same time, more than four years have passed since the events that gave rise to this Action. As time passes, the interest of class members has decreased. Wilk Dec. ¶ 12; Santos Dec. ¶4. Only six of the ten original class members on whose behalf these claims were brought to the attention of defendant have returned signed claim forms. Wilk Dec. ¶ 13. Similarly, the ability to maintain contact with class members decreases. Santos Dec.   ¶ 5; SCA Report ¶ 25; Ex. 2. Many are not able to be located through traditional search methods such as skip traces or publication. SCA Report ¶ 8-10, 21. Traditional in-person outreach to migrant workers continues to be hampered by the COVID-19 pandemic. Wilk Dec. ¶ 5. As ability to contact class members decreases, the ability for class members to actually receive damage awards decreases significantly.

### 4.  The amount offered in settlement

The parties' settlement provides equal statutory damages of $400.00 to each of the 41 class members who has filed a claim under the procedures outlined in the Settlement Agreement. Participating class members will receive $200 for each of the claims alleged in the Class Action Allegation Complaint: $200 for violation of the AWPA, and $200 for violation of ORS 652.615.

As outlined in Section III.A., *supra,* the amount of statutory damages recoverable under each statute is uncertain. The amount of statutory damages under the AWPA is discretionary:

"up to $500 per violation." Multiple infractions of a single AWPA provision constitute only one violation if they occur within a single transaction. 29 U.S.C. § 1854(c)(1); *Martinez v. Shinn,* 992 F.2d 997, 1000 (9th Cir. 1993). A defendant's ability to prevent future violations is relevant. *Beliz v. W.H. McLeod & Sons Packing Co.,* 765 F.2d 1317, 1332 (5th Cir. 1985). Whether the violations are "substantive" or "technical" in nature is an appropriate consideration. *Id.* at 1332. The Court can consider the total number of violations, the total number of plaintiffs involved and the total amount of recovery, including recovery on closely related claims in the same action that will in part compensate for damage caused by violation of the AWPA. *Id.* at 1332-1333.An award of the full $500 is "not the norm." *Aviles v. Kunkle,* 765 F. Supp. 358 (S.D. Tex. 1991)*.*

Likewise, the amount of statutory damages recoverable under ORS 652.615 is uncertain. No state appellate court has affirmatively decided whether multiple violations of ORS 652.610 allow multiple recovery of statutory damages pursuant to ORS 652.615, although multiple recoveries were allowed by a Marion County trial court and were not at issue on appeal. *Jones v. Four Corners Rod and Gun Club*, 366 Or. 100, 456 P.3d 616 (2020).

As noted above on the other hand, federal courts in Oregon have limited recovery under ORS 652.615 to $200 per plaintiff. The Court in *Brinkman Brinkman v. ABM Onsite Servs. - W., Inc.,* No. 3:17-CV-00275-SI, 2019 WL 1782117, *3 (D. Or. April 23, 2019) was "unconvinced that the singular usage of 'violation' in the statute is reflective of the legislature's intent to make the $ 200 penalty available 'per' violation." The Court also cited footnote two in an Oregon Supreme Court case, *Allen v. Cty. of Jackson Cty.*, 340 Or. 146, 129 P.3d 694 (2006), which states that "[t]he judgment below awarded each recovering plaintiff more than $200 in damages, so the statutory minimum recovery did not come into play." The Brinkman Court interpreted this non-holding as the "best indicator of how the Oregon Supreme Court views the

Page 9- PLAINTIFFS' UNOPPOSED MOTION AND MEMORANDUM FOR
     FINAL   APPROVAL OF CLASS SETTLEMENT

proper measure of damages of this statute: actual damages or $200 total, and not $200 per violative deduction."

The proposed settlement provides $400 in statutory damages to each class member: The proposed settlement provides certain statutory damages without delay and is well within the range of reasonableness. Defendant's changes to its housing agreements and deduction procedures provide additional value to class members and other migrant workers coming to Blue Heron to work. Wilk Dec. ¶ 2. The settlement provides fair, reasonable and adequate relief to the class, based on the nature and value of the class claims. It also provides certain and prompt recovery to participating class members who would otherwise receive nothing.

The Court should "consider and weigh the nature of the claim, the possible defenses, the situation of the parties, and the exercise of business judgment in determining whether the proposed settlement is reasonable." *City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 462 (2d Cir. 1974). The Court need not decide the merits of the case or substitute its judgment of what the case might be worth for that of class counsel; however "the court must at least satisfy itself that the class settlement is within the 'ballpark' of reasonableness." 4 Newberg on Class Actions 13.49 fn 3 (5th Ed.), citing *Kullar v. Foot Locker retail, Inc.*, 168 Cal. App. 4th 116, 133 (1st Dist.CA 2008). The Ninth Circuit has rejected mathematical calculation and specific findings of the "net expected value." *Lane v. Facebook, Inc.*, 696 F.3d 811, 823 (9th Cir. 2012)(rejecting argument "that the district court was required to find a specific monetary value corresponding to each of the plaintiff class's statutory claims and compare the value to the proffered settlement award"). The Court also concluded, "even as to statutory damages…making any prediction about that recovery [would be] speculative and contingent." F.3d at 823.*See, also Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d 1114, 1125-26 (E.D. Cal. 2009) (finding settlement value

fell within the range of possible approval considering that plantiffs' claims turn on unsettled legal questions that might not be resolved in their favor, and that plaintiffs would be required to expend considerable additional time and resources potentially outweighing any additional recovery obtained through successful litigation).

### 5. The extent of discovery completed and the stage of the proceeding

Plaintiffs made written demand for class relief on June 26, 2018, and defendant acknowledged in writing on July 27, 2018 that "authorization [for rent deductions] was not part of the lease." Wilk Dec. ¶ 1. Defendant expressed a preference to resolve the matter amicably and further stated, "We have ceased the violations about which you wrote and have changed our practices to conform with the law so that they do not happen again." Wilk Dec. ¶ 2. The parties engaged in informal discovery and settlement discussions before the filing of the Class Action Allegation Complaint. Wilk Dec. ¶ 3.

Counsel for plaintiffs engaged in extensive discussion with counsel for defendant concerning payment of appropriate statutory damages to the class. Wilk Dec. ¶ 4. Counsel also discussed possible resolution of unrelated claims for alleged familial status discrimination in the labor housing brought by five individual workers. Wilk Dec. ¶5. The parties were unable to reach agreement on settling all claims, and plaintiffs filed their Class Action Allegation Complaint on June 26, 2019. Wilk Dec. ¶ 6. Defendant provided extensive written discovery, including nearly 1000 pages of documents. Wilk Dec. ¶ 7. Defendant's documents indicated the lack of written authorizations for rent charge deductions for 41 class members. Wilk Dec. ¶ 8. In anticipation of depositions and motion practice, the parties agreed to attempt resolution through a judicial settlement conference. Wilk Dec. ¶ 15.

### 6. The experience and views of counsel

Plaintiffs' counsel and defendant's counsel are experienced employment lawyers with experience in class action litigation. Lead counsel for plaintiffs has been an Oregon lawyer for 40 years, and a farmworker legal services lawyer for 39 years. Wilk Dec ¶ 17. Counsel for the defendant work for a very reputable Salem law firm and have a combined 24 years of experience. Wilk Dec.¶ 18.

The experience of counsel is considered "somewhat as a proxy for both 'trustworthiness' and 'reasonableness'."  4 Newberg on Class Actions  13.53. *See, Jones v. Singing River Health Services Foundation*, 98 Fed. R. Serv. 3d 228 (5th Cir. 2017): "[I]f experienced counsel reached this settlement, the court may trust that the terms are reasonable in ways that it might not had the settlement been reached by lawyers with less experience in class action litigation." Counsel all support this settlement as fair, reasonable and adequate, arrived at after an arms-length and non-collusive negotiation process, including a day-long judicial settlement conference.

### 7.  The presence of a government participant

After settlement negotiations were unsuccessful, the parties agreed to attempt settlement through a judicial settlement conference with the Honorable Thomas M. Coffin. Wilk Dec. ¶ 15.The parties participated in the settlement conference on January 10, 2020 and were able to reach settlement on substantive terms.[1] Given the uncertainties of outcome, damages available, and time until final decision, the parties appreciate Judge Coffin's facilitation of settlement and believe the settlement agreement to be fair, reasonable and adequate, and in the best interests of plaintiffs and class members.

---

[1] The parties also attempted resolution separately of the familial status discrimination claims at the judicial settlement conference (Case No.  6:19-CV-01019-AA). Final resolution of both matters was achieved on September 20, 2020, when Defendant signed both settlement agreements.

8. **The reaction of class members to the proposed settlement**

The settlement has full support from the named plaintiffs and all class members who have returned claim forms. SCA Report ¶ 27. No class member has filed a written opt-out statement or a written objection to the settlement. SCA Report ¶ 28, 29. No class member has expressed that his or her decision to not participate in the class is in any way related to his or her dissatisfaction with the terms or amount of the settlement. SCA Report ¶ 30. Class members who have returned signed claim forms have also assisted others in obtaining and returning claim forms. SCA Report ¶ 33. Many class members have been thankful and want to know how quickly they will receive their checks. SCA Report ¶ 34. Five class members have indicated that they do not want the money. SCA Report ¶ 33, Ex. 2; Santos Dec.  ¶ 6,7.

14 of the 41 identified class members timely returned claim forms, a participation rate of 34.15 percent. This is well within the range of participation in farmworker employment class action settlements. Wilk Settlement Dec. ¶  *See, Mora et al. v. Cal West Ag Services, Inc. et al.,* Case No. 1:15-cv-01490-LJO-EPG, ECF No. 100 (ED Ca. 1019) (accepting a 20.32 percent participation rate based on the parties' assertion that "this level of participation is typical of this type of case, which involves class members who are part of a migrant workforce and a case that is several years old"). Most recently, Judge Mendoza in the Eastern District of Washington gave final approval to a farmworker employment class action settlement in which the participation rate was 30 percent. Wilk Dec. ¶ 17; *Renteria et al. v. Stemilt Ag Services LLC,* Case No. 2:20-cv-00392-SMJ ECF No. 47 (September 9, 2021). While plaintiffs were recently able to obtain a 53.62 percent participation rate in another farmworker employment class action, that case involved a much higher settlement amount and three defendants with whom class members

had less employment attachment. *Perez et al. v. Planasa et al.*, Civ. No.1:19-cv-01477-AA, ECF No. 72 (July 15, 2021). Wilk Dec. ¶ 18.

As outlined in Section IV, *infra,* individual written notice of the settlement and claim forms were mailed to all class members, and considerable additional efforts were made to apprise class members of the settlement and claim process. While the number of filed claims is lower than desired, there is no reason to think that non-participation in any way indicates dissatisfaction with or disapproval of the settlement. SCA Report ¶ 30. Section 2.3.E. of the settlement agreement specifically prohibits the parties, their counsel and anyone on their behalf from soliciting or encouraging anyone to object to or refrain from participating in the settlement, and there is no evidence that anybody has done so. Wilk Dec. ¶ 19. The settlement agreement provides for no reversion of unclaimed funds to defendant, eliminating any financial incentive to discourage participation. Ex. 1 Sec. 3.1.A.

### IV. Final Approval of Settlement As a Class Action

In its April 16, 2021, Preliminary Approval Order found: "The Court preliminarily finds that this Action meets the requirements for class certification under Federal Rule of Civil Procedure 23." The prerequisites of Fed. R. Civ. P. 23(a) continue to be met: numerosity; commonality; typicality; and adequacy of representation. The requirements of Fed. R. Civ. P. 23(b)(3) also continue to be met: predominance of issues; superiority to individual actions; and efficiency and manageability. The Court should give final approval to the class action settlement.

Fed. R. Civ. P. 23(c)(2)(B) provides: "For any class certified under Rule 23(b)(3) – or upon ordering notice under Rule 23(e)(1) to a class proposed to be certified for purposes of settlement under Rule 23(b)(3) – the court must direct to class members the best notice that is

practicable under the circumstances, including individual notice to all class members who can be identified through reasonable effort." Fed. R. Civ. P. 23(e)(1) provides: "The court must direct notice in a reasonable manner to all class members who would be bound by the proposal."

In its April 16 Order, the Court approved the notice and claim process set out in the Settlement Agreement: "The Court finds that the distribution of the Notice substantially in the manner and form set forth in the Agreement meets the requirements of due process under the Constitution and Rule 23(e), and that such Notice is the best practicable under the circumstances and shall constitute due and sufficient notice to all persons entitled thereto."

Notice of the pendency of the class action and proposed settlement was provided to class members in accordance with the terms of the Settlement Agreement and Court Order. SCA Report ¶ 5-24. Counsel for defendant provided the Class List with current addresses and telephone numbers on March15, 2021. SCA Report ¶ 5. Ten class members had addresses at the Blue Heron River Road labor housing. Eight class members used the address of Felicita Lopez de Amaral, 545 Warren St. S. #8, Monmouth, OR.[2] SCA Report ¶ 6.

Copies of the court-approved Notice and Claim Form were sent to all 41 class members by first class mail on April 22, 2021. SCA Report ¶ 3. The Bar Date by which class members were required to mail (postmark) their claim forms was September 21, 2021. SCA Report ¶ 4.

Only three mailings were returned as undeliverable, and the Settlement Claims Administrator was able to obtain new addresses for the three returned mailings and re-mailed notices and claim forms to the new addresses. SCA Report ¶ 10. On May 26, counsel for

---

[2] Many class members are part of the extended Amaral family, and long-time employees of defendant, including all four named plaintiffs.

defendant advised that one mailing to a class member's last known address at the Blue Heron River Road labor camp was unclaimed. SCA Report ¶ 8. An Accurint skip trace was done for that class member, but no information was able to be obtained for that name.   SCA Report ¶ 9.

On July 14, 2021, plaintiffs' counsel contacted counsel for defendant to request that defendant provide any additional unclaimed notices and claim forms, and a list of all class members currently working at Blue Heron with their telephone numbers. SCA Report ¶ 11. Counsel also suggested that defendant allow targeted radio ads on Radio Poder, the Salem radio station most likely to be heard by class members, and posting of the notice of settlement at the labor camp in accordance with Section 2.3.D. of the Settlement Agreement. SCA Report ¶ 12.

Counsel for defendant provided an updated class list on July 20, and   notices and claim forms were sent to new addresses to six class members to   on July 21, 2021.   SCA Report ¶ 13. Counsel for defendant advised that there were no additional unclaimed notices at the labor camp and also advised   of an additional class member working at Blue Heron, but was unable to provide an updated address. SCA Report ¶ 14.

On July 21, plaintiffs' counsel requested social security numbers in order to do meaningful Accurint skip traces on   class members with whom there had been no contact. SCA Report ¶ 21. On August 19, counsel for defendant requested a list of class members who had not responded, and   that same day plaintiffs' counsel provided a list of 17 class members with whom which there had been no contact. SCA Report ¶ 19. On August 24, counsel for defendant provided the social security numbers for these class members and also advised that seven of them were currently employed at Blue Heron and that their addresses were correct. SCA Report ¶ 24 .   17 additional Accurint searches were completed on August 27, and new notices and claim

forms were sent on that date to ten class members.   SCA Report ¶ . Reports were unable to be obtained for seven class members.   SCA Report ¶ 21.

Oregon Law Center paralegal Enrique Santos spoke directly to 12 class members by telephone to inform them of the settlement and claim process, and left voice messages for four others. Santos Dec. ¶ 8.   Notice of the settlement and claim process were posted on the Oregon Law Center Facebook page from August 19 through August 24, 2021. SCA Report  ¶ 18. Additional efforts were made to contact class members by telephone or through the efforts of the named plaintiffs or family of class members. SCA Report ¶ 23. In all, 20 class members were contacted by other class members or relatives and either received notices and claim forms directly from them or were advised of the claim and how to contact plaintiffs' counsel. SCA Report ¶ 24.

All efforts agreed by the parties have been made to provide actual and individualized written notice of the proposed settlement to class members. SCA Report ¶ 25. There have been no objections or opt-out statements filed in the Action, and no class member has expressed dissatisfaction with the terms of settlement. SCA Report ¶ 28- 30.   The Court should give final approval to the parties' settlement on a class action basis so that class members who have completed claim forms can receive the benefits of the class settlement.

### V. Approval of Cy Pres Award

Section 3.1.A. of the Settlement Agreement provides: "Payout Amount. Each of the 41 Authorized Claimants each shall be entitled to receive a payment of $400.00 for a total "Payout Amount" of $16,400. for the class claims. The remaining portion, if any, of the Payout

Amount that is undistributed or unclaimed by class members shall revert to the charity of Named Plaintiffs' choosing: Farmworker Housing Development Corporation."

The concept of a *cy pres* award is "simply redirecting money from one set of beneficiaries (absent class members) to an entity whose interests lie "as near as possible" to that group - namely, a charity working on issues related to the group's underlying causes of action - rather than have the monies revert to the defendant."   4 *Newberg on Class Actions* Section 12.32 (Fifth Edition, 2014); *Dennis v. Kellogg Co.* 697 F. 3d 858, 866 (9th Cir. 2012). The nexus requirement is not absolute: "The general sense is that while distribution to an entity that is closely related to the class is preferable, 'the doctrine of cy pres and courts' broad equitable powers now permit use of funds for other public interest purposes by educational, charitable and other public service organizations.'" 4 *Newberg on Class Actions* Section 12.32 (Fifth Edition, 2014) (citations omitted).   Courts also consider "the geographic breadth of the plaintiff class and the range of the *cy pres* recipient's work." 4 *Newberg on Class Actions* Section 12.32 (Fifth Edition, 2014); *Nachshin v. AOL LLC*, 663 f.3d 1034, 1040   (9th Cir. 2011). This action arises from charges and conditions required by defendant to live in its farm labor housing in Marion and Polk Counties.[3]   Wilk Dec.¶ 20. The work of the intended *cy pres* beneficiary is   closely related to the issues in this action and   matches the geographic breadth of the class.

Farmworker Housing Development Corporation (FHDC) is a charitable non-profit corporation exempt from federal taxation under Section 501(c)(3) of the Internal Revenue Code. Wilk Dec. ¶ 21. FHDC provides affordable housing and supportive services to migrant and seasonal farmworkers and their families in the mid-Willamette Valley, including farmworker

---

[3] A companion case, *Amaral et al. v,. Blue Heron Farm LLC* (Case No.   6:19-CV-01019-AA), involved claims of housing discrimination based on familial status, and was part of the judicial settlement conference that led to resolution of both cases.

apartment complexes in Independence, Salem and Woodburn. Wilk Dec. ¶ 22. Article 2.02 of its Bylaws sets out its Mission Statement: "Recognizing the vital contribution of farmworkers to our economy, the mission of FHDC is to develop farmworker leadership for stronger and more secure families and communities through affordable housing, social services, education and economic development." Wilk Dec.¶ 23. Named plaintiff Elizabeth Amaral Guijaro and her family currently reside in FHDC's Colonia Amistad apartments in Independence. Wilk Dec. ¶ 24. Plaintiffs' counsel Mark J. Wilk serves on the FHDC board of directors. Wilk Dec. ¶25.

## VI. Approval of Attorney Fees and Costs

Section 3.1.B. of the Settlement Agreement provides, "Class Counsel will petition the Court for an award of $400 for court costs and $10,000, which shall include attorney fees, expenses incurred in connection with Class Counsel's prosecution of the Action and its resolution, and for costs of administering the QSF. Defendant shall not oppose this application, including any appeal or request for reconsideration if the application isdenied or modified by the Court."

The amount of Plaintiffs' attorney fees was discussed only after terms were reached for settlement of the class action. Wilk Dec.¶ 27. The agreed amount of fees is more than reasonable and substantially less than the lodestar calculation of actual attorney time spent times a reasonable hourly rate. Lead counsel alone has spent  over 173 hours in the prosecution of this action. Wilk Dec. ¶ 37. Co- counsel Veronica Digman-McNassar has spent 37.1 hours on this action. Wilk Dec. ¶ 39. Paralegal Enrique Santos has spent at least 82 hours. Wilk Dec. ¶ 40.

Plaintiffs seek $10,000 in attorney fees for the prosecution of this Action and claim administration and $400 in court costs, pursuant to the Settlement Agreement. Ex. 1 Sec. 3.1.B.


DATED: October 1, 2021                OREGON LAW CENTER

                                      s/ Mark J. Wilk
                                      Mark J. Wilk, OSB No.814218
                                      Of Attorneys for Plaintiffs
                                      Telephone: (503)981-0336
                                      Of Attorneys for Plaintiffs